UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
THEODORE KING and GARY LA BARBERA,          :
Trustees of the Local 282 International             :
Brotherhood of Teamsters Welfare, Pension,      :
Annuity, Job Training and Vacation/Sick Leave  :          **MEMORANDUM & ORDER**
Trust Funds,                                              :
                                                             :          01-CV-3797 (DLI)(VVP)
                    Plaintiffs,                          :
                                                             :
              -against-                                  :
                                                             :
UNIQUE RIGGING CORP. and UNIQUE            :
WAREHOUSING AND LEASING CORP.,         :
                                                             :
                    Defendants.                        :
-------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**


        Pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

("ERISA"), plaintiffs seek payment of unpaid contributions, plus interest, from defendant

companies, which they claim are liable as alter egos and/or a single employer.  For the reasons

below, plaintiffs' motion for summary judgment is granted as to both liability and damages.


**I.        Facts**

        Defendant Unique Rigging Corp. ("Unique Rigging") is a rigging company that employs

around twenty workers, excluding management, to lift large items into buildings in connection with

construction projects.  The President and sole shareholder of Unique Rigging, Doug Smith, is also

the sole shareholder of defendant Unique Warehousing and Leasing Corp. ("UWL").  Plaintiffs are

trustees of the Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds ("the Funds"), which were established pursuant to the terms of collective bargaining agreements between the labor organization Local 282 and employers. Such employers are required to make contributions to the Funds on behalf of employees covered by the collective bargaining agreements. Unique Rigging signed a series of Building Material Contractors Industry collective bargaining agreements ("CBAs") with Local 282 covering periods from July 1, 1993 through June 30, 1996; July 1, 1996 through June 30, 1999; July 1, 1999 through June 30, 2002; and July 1, 2002 through June 30, 2005.

Beginning in 1998, plaintiffs had audits performed pursuant to the Funds' Agreement and Declaration of Trust ("Trust Agreement"), which the CBAs incorporate by reference. These audits reported that Unique Rigging and UWL owed unpaid contributions, totaling $945,158.77, plus interest, for failing to report all hours worked in covered employment under the CBAs. Plaintiffs also maintain that, as revealed by the audits and deposition testimonies, Unique Rigging and UWL "are essentially two branches of the same company," which obligates UWL to make contributions pursuant to the CBAs signed by Unique Rigging. (Pls.' Mem. at 7.)

The "Loading and Yard Work" section of the CBAs provides:

> Chauffeurs shall help to load and unload trucks. Chauffeurs shall also work in the yard when requested to do so by the Employer, provided all available yardmen are working. If no driving work is available for one (1) or more chauffeurs at the beginning of the shift, the Employer may offer the opportunity to perform yard work to such chauffeurs in seniority order, and they shall have the option to accept or reject such offer. If a chauffeur accepts such yard work assignment he shall not make any deliveries that day if a chauffeur more senior than he refused the yard work assignment.

(Cody Decl. Ex. B § 7, Ex. C § 7.) As plaintiffs point out, this section does not specify that, to be

covered under the CBAs, driving work must be performed on a job site where there is a union steward.

Defendants maintain that the amounts reported in the audits are not owed, because the CBAs were modified by an oral agreement between Unique Rigging's Vice President, Richard Kaye, and Aldo Colussi, Local 282's Secretary/Treasurer and a trustee of the Funds. Defendants claim that, pursuant to this oral agreement, Unique Rigging was only required to have one or two drivers join Local 282 and Unique Rigging would pay contributions only for work those drivers performed driving trucks to union job sites. In accordance with this alleged oral agreement, Unique Rigging had two of its drivers, James Monroe and Robert Diaz, join Local 282 and submitted contributions only when these two drivers would drive trucks to union job sites.

## II.     Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The court must deny summary

judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III.    Single Employer Status[1]

For a company to be bound by a CBA signed by another company, the plaintiff must show that (1) the companies constitute a "single employer," and (2) the two companies represent an appropriate employee bargaining unit. *Lihli Fashions Corp., Inc.*, 80 F.3d 743, 747 (2d Cir. 1996). The Supreme Court's four-factor test for determining whether companies constitute a single employer focuses on "interrelation of operations, common management, centralized control of labor relations and common ownership." *Id.* (quoting *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256, 85 S. Ct. 876, 13 L. Ed. 2d 789 (1965) (per curiam)). No one factor controls and, "[u]ltimately, single employer status depends on all the circumstances of the case and is characterized by absence of an 'arm's length relationship found among unintegrated companies.'" *Id.* (quoting *NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 551 (3d Cir. 1983) (citation omitted)).

It is undisputed that Doug Smith is the President and sole shareholder of both Unique Rigging and UWL. It is also undisputed that Smith supervises employees, oversees operations, and performs management functions for both companies. Defendants agree that Smith shared responsibility for labor relations of both companies with Richard Kaye, Vice President of Unique

---

[1] For reasons of judicial economy, the court will not address plaintiffs' argument that the two companies are alter egos, which would also be a basis to find that they are jointly and severally liable. The court notes that, in their opposition papers, defendants did not counter plaintiffs' contentions that Unique Rigging and UWL are a single employer and/or alter egos.

Rigging. Both companies use drivers to transport materials to and from job sites, share a fleet of trucks, and lend each other money. When Smith set up UWL, he transferred ownership of all vehicles and most equipment from Unique Rigging to UWL, without any compensation paid to Unique Rigging. These vehicles and equipment are still registered to Unique Rigging, for which Unique Rigging pays insurance, and Unique Rigging pays taxes on the vehicles and claims the corresponding depreciation tax credits. Unique Rigging pays an outstanding loan on one of the cranes owned by UWL. The trucks used by UWL display the name "Unique Rigging." The two companies share the same headquarters address, the same office staff, and the same accountant. The two companies share a telephone, which is answered "Unique Rigging." The undisputed facts indicate that Unique Rigging and UWL are not operating at arm's length and are an integrated, "single employer."

Defendants also do not dispute any of the facts plaintiffs use to show that there is an appropriate bargaining unit. The court must consider whether there is a "community of interests among the relevant employees . . . and [examine] factors such as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." *Brown v. Sandimo Materials*, 250 F.3d 120, 128 n.2 (2d Cir. 2001) (internal quotation marks and citations omitted). Plaintiffs note that Monroe and Diaz are the only Unique Rigging employees who are also employees of UWL. Monroe and Diaz are based at the same location, drive the same vehicles when they perform work for either company, and are both supervised by Doug Smith. As stated by plaintiffs, "the only difference Monroe and Diaz experience in working for Unique Rigging versus UWL [is] that each receives a slightly higher hourly pay rate and has benefit contributions made on their behalf when they performed work for Unique Rigging,

but receive a lower hourly pay rate and no benefit contributions when they work for UWL." (Pls.' Mem. at 15–16.) Though the court does not have any information with regard to the other employees of the two companies, it is satisfied that the facts offered regarding Monroe and Diaz show a "community of interests," and defendants have proffered no arguments to show that their employees do not constitute an appropriate bargaining unit.

Therefore, the court finds that the companies are jointly and severally liable for any underpayment of benefit fund contributions by Unique Rigging and grants summary judgment to plaintiffs on this issue.


## IV.    Terms of the CBAs

The court must reject defendants' argument that there was an oral modification to the CBAs. Pursuant to ERISA § 515,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The Second Circuit has held that "otherwise valid collection regulations promulgated by a multiemployer plan to effectuate contributions cannot be defeated by implied or unwritten agreements between employers and unions." *New York State Teamsters Conference Pension & Retirement Fund v. United Parcel Serv., Inc.*, 382 F.3d 272, 280 (2d Cir. 2004).

> The policies of Section 515 require that multiemployer plans be able to rely on the plain text of CBAs. Otherwise, . . . multiemployer plans could become enmeshed in years of controversy concerning alleged unwritten agreements between employers and unions. Such troublesome disputes could easily be obviated by documenting such allegedly uncontroversial understandings in the express text of CBAs.

*Id.* Accordingly, the court rejects defendants' argument that there was an oral modification to the CBAs. The court must rely upon the written terms of the CBAs, which, as undisputed, cover all drivers regardless of whether they drive trucks to union job sites.

Defendants are not entitled to an equitable estoppel defense, which is only available in ERISA cases where there are "extraordinary circumstances." *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). The elements of equitable estoppel are: "(1) material representation, (2) reliance[,] and (3) damage." *Id.* The reliance must have been reasonable. *See, e.g., Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996) (promise made is one that "reasonably should have expected to induce action or forbearance on her part"). Defendants claim that, to their detriment, they relied on statements regarding the oral modification of the CBAs. It was unreasonable for defendants to rely on any supposed oral modification of the CBAs because the language in the CBAs clearly set forth contractual terms, to which the parties were bound. Moreover, "[t]he use of estoppel to modify a valid contractual agreement, where such has the effect of overriding the written terms of an ERISA plan, is . . . precluded." *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 798 (S.D.N.Y. 1993).

Summary judgment is granted on the issue of defendants' liability for contributions under the CBAs.


V.      **Damages**

Plaintiffs argue that summary judgment should be granted as to damages and that they should be awarded the amount calculated by the audits. Defendants insist that the audit amounts likely include work that was not covered by the CBAs, but they do not mention an exact amount of alleged

error.  In considering whether to grant summary judgment on damages, the question is "whether

defendant[s] ha[ve] submitted evidence that raises a factual dispute as to the amount of damages

owing the Fund."  *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating*

*Employers v. Murphy's Tire, Inc.*, 1998 WL 865594, at *8 (N.D.N.Y. 1998).

One of defendants' main arguments is that only yard work performed in connection with

driving work is covered under the CBAs; thus, they argue, declarations signed by Monroe and

Diaz—indicating that they performed "various labor tasks on Unique Rigging's premises related to

maintaining the yard"[2]—show that Monroe and Diaz performed work not covered under the CBAs.

The court finds this argument unpersuasive, because the CBAs state: "If no driving work is available

for one (1) or more chauffeurs at the beginning of the shift, the Employer may offer the opportunity

to perform yard work to such chauffeurs in seniority order."  (Cody Decl. Ex. B § 7, Ex. C § 7.)  The

plain meaning of this provision is that yard work does not have to be related to driving work, because

it can be performed under the CBAs when no driving work is available.  Indeed, Monroe and Diaz

confirm that yard work was performed sometimes in the exact manner contemplated by the CBAs:

"During various periods of my employment, Unique Rigging has lacked sufficient work to employ

me as a driver. . . . Rather than lay me off, Unique Rigging employed me to perform various labor

tasks on Unique Rigging's premises related to maintaining the yard . . . ."  (Monroe Decl. ¶¶ 2–3;

Diaz Decl. ¶¶ 2–3.)

Defendants also point to a lack of complete records as a reason why summary judgment

should be denied, stating that they only kept records for Monroe and Diaz pursuant to the alleged

---

[2] (Monroe Decl. ¶ 3; Diaz Decl. ¶ 3.)  For Monroe, this other work included "welding, moving items, cleaning, sweeping[,] and performing repairs," and, for Diaz, the other work was "moving items, cleaning, sweeping[,] and performing repairs."  (*Id.*)

modified CBAs. Under ERISA, employers must "maintain records with respect to each of [their] employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). Because federal district courts in this Circuit have declined to apply a burden-shifting analysis to damages on summary judgment, "an employer's failure to come forward with documentary evidence in opposing summary judgment is not fatal." *Murphy's Tire*, 1998 WL 865594, at *8.

However, in the instant case, there do not remain any factual disputes. Defendants only challenge the collective bargaining agreement insofar as it contained an alleged oral modification, which the court has deemed unacceptable as a matter of law. Defendants do not dispute that Monroe and Diaz performed driving work and work "in the yard," both of which the court has found covered by the CBAs as a matter of law. Defendants also do not dispute that they did not report to the Funds any other driving or yard work hours spent by other employees (for example, Carlos Peralta, Cornelio Rojas, and Francisco Rojas). Other than the failed oral modification argument, defendants present no arguments challenging the amount of unpaid contributions as calculated by the audits.

As defendants have not raised any factual dispute concerning damages, the court grants summary judgment as to damages. Plaintiffs are awarded $945,158.77 in unpaid contributions, as well as interest, the greater of additional interest or liquidated damages, and reasonable attorney's fees and costs, pursuant to ERISA § 502(g), 29 U.S.C. § 1132.

## VI. Conclusion

The court grants plaintiffs' motion for summary judgment as to liability and damages due under the CBAs signed with Local 282. Plaintiffs are awarded $945,158.77 in unpaid contributions,

as well as interest, the greater of additional interest or liquidated damages, and reasonable attorney's fees and costs, pursuant to ERISA § 502(g), 29 U.S.C. § 1132. Plaintiffs are directed to submit an affidavit calculating damages owed by October 4, 2005.

SO ORDERED.

DATED:      Brooklyn, New York
            September 20, 2005

                                    _____/s/_____
                                          DORA L. IRIZARRY
                                       United States District Judge